UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DEBORAH BACOTE-WOOD,

                                Plaintiff(s),

   -against-

YONKERS KIA,

                     Defendant(s).
------------------------------------------------------------------------X

Index No.:

**COMPLAINT**
**(Jury Trial Demanded)**

      **AS AND FOR PLAINTIFF'S COMPLAINT,** in the above-captioned action, plaintiff Deborah Bacote-Wood ("Plaintiff"), by and through Plaintiff's attorneys, Kasell Law Firm, alleges as follows:

## PARTIES

1. At all times mentioned herein Plaintiff was and is an individual residing at 120 Casals Place Bronx, NY 10475.

2. Upon information and belief, at all times herein mentioned, Yonkers Kia ("Defendant") was and is a New York Corporation with its principal place of business in the County of Westchester at 1850 Central Park Ave., Yonkers, NY 10710.

3. Upon information and belief, Defendant is engaged in the business of selling and servicing of motor vehicles. Defendant is also engaged in the financing and arranging of financing of motor vehicles that it sells to the public.

## JURISDICTION AND VENUE

4. Jurisdiction is premised on 15 U. S. C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

5. Plaintiff instituted this action or actual damages, statutory damages, attorneys' fees and costs against Defendant for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* (hereinafter "TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 1026, promulgated pursuant thereto, and for related and unrelated violations of New York General Business Law § 349.

6. Venue in this District is proper in that the conduct complained of occurred here.

## STATUTORY FRAMEWORK
## TILA

7. The Truth in Lending Act ("TILA") is a federal law designed to protect consumers in credit transactions by requiring clear and conspicuous disclosure of key terms of the lending agreement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended, 15 USC §§ 1601 *et seq*. The regulations implementing the statute, which are known as an as "Regulation Z" are codified at 12 C.F.R. § 1026. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

8. The retail installment sales contract ("RISC") is the document that a consumer is supposed to receive in which the requisite TILA disclosures are to be made.

## BACKGROUND

9. In April of 2019, Plaintiff leased a new 2019 Kia Optima, VIN # 5XXGV4L28KG305851 (the "Vehicle") from Yonkers Kia. This was the second time she had leased a vehicle from Defendant.

10. The lease provided Plaintiff with an option to purchase the Vehicle at a price of $20,913.20 plus a $300 Purchase Option Fee at the end of the lease term. A copy of the lease is attached as Exhibit "A".

11. Upon information and belief, Defendant created multiple versions of the lease with different terms contained in them in a first effort to deceive Plaintiff.

12. On or about February 11, 2022, Plaintiff decided to exercise her option to purchase the Vehicle.

13. However, rather than honor the written lease that provided for Plaintiff to purchase the Vehicle at a price of $20,913.20 plus a $300 Purchase Option Fee, Defendant charged Plaintiff $53,152 as the cash price for the Vehicle— an increase of $21,939. A copy of the RISC for Plaintiff's purchase is attached as Exhibit "B".

14. This $21,939 increase from the lease buyout price to the cash price in the RISC represents a finance charge that had to be disclosed as such.

15. Plaintiff thought that she had arranged with Matt Adovic, Defendant's finance manager, to make a down payment of $20,000 and to purchase an extended warranty for $5,600 that would cover the Vehicle from bumper to bumper for 10 years.

16. However, when Plaintiff saw other documents with other prices that were separate from the RISC, she asked Matt Adovic about them and he claimed that he needed to put those numbers in place to secure the allegedly advantageous Vehicle price he had gotten for Plaintiff.

17. In fact, Defendant had applied a down payment of $25,600 to the transaction and added: (i) a Tire & Wheel service contract for $3000; (ii) a Maintenance Service Contract for $4,580; (iii) Paintless Dent Repair for $4580); (iv) and a Key Replacement Plan for $6,160 to the transaction without Plaintiff's consent.

18. And, whereas Plaintiff thought a service contract she was purchasing was for 10 years, it turns out that it was only for three years.

19. But even if the Tire & Wheel service contract ($3000); Maintenance Service Contract ($4580); Paintless Dent Repair ($4580); and Key Replacement Plan ($6160) that Defendant added to the transaction without Plaintiff's consent are factored in, the numbers for this transaction still do not add up. Copies of the Tire & Wheel Service Contract, Maintenance Service Contract, Paintless Dent Repair, and Key Replacement Plan are attached as Exhibits C, D, E, and F, respectively.

20. The four items in Exhibits C - F total $18,320 leaving a discrepancy of $3619 between the cash price of the Vehicle in the RISC and the lease buyout price.

21. Nevertheless, this increase of $3619 was required to be disclosed as a finance charge under TILA but was not.

## COUNT I

## MULTIPLE VIOLATIONS OF THE TRUTH IN LENDING ACT

22. Plaintiff repeats the allegations set forth in paragraphs 1 - 21 as if fully set forth at length herein.

23. At all times relevant hereto, Yonkers Kia regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and are the persons to whom the transaction which is the subject of this action is initially payable, making Yonkers Kia a creditor within the meaning of TILA, 15 U.S.C. § 1602 (f) and Regulation Z § 1026.2(a)(17).

24. Plaintiff and Yonkers Kia entered into a consumer credit transaction that was memorialized in an agreement covered by the TILA as purported by the terms memorialized in the RISC(s) annexed as Exhibit "B".

25. Under the transaction, Yonkers Kia failed to deliver all material disclosures required by the TILA and Regulation Z in that Yonkers Kia failed to accurately disclose the "total sale price" in violation of Regulation Z § 1026.18(j).

26. Yonkers Kia also breached Regulation Z § 1026.18(c)(1)(iii) and 15 U.S.C. § 1638(a)(1)(2)(B)(iii) by not properly disclosing the amounts paid to others on Plaintiff's behalf.

27. Plaintiff relied on these inaccurate disclosures to her detriment.

28. Plaintiff is therefore entitled to actual damages, statutory damages and punitive damages.

29. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## COUNT II
## VIOLATION OF GENERAL BUSINESS LAW § 349

30. Plaintiff repeats the allegations set forth in paragraphs 1 - 29 as if fully set forth at length herein.

31. New York General Business Law § 349 prohibits the use of deceptive or unfair practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

32. The conduct alleged herein, and the sale and financing of vehicles is consumer oriented conduct as it has the demonstrated potential to be repeated with other consumers.

33. Yonkers Kia also engaged in deceptive acts and practices that damaged Plaintiff by misrepresenting "the amounts paid to others on your behalf" in connection with the RISC that Plaintiff executed.

34. Yonkers Kia's actions and practices were misleading in a material respect and Plaintiff has been damaged as a result.

35. Plaintiff hereby demands that all attorneys' fees, costs, and other fees of this action be borne by Yonkers Kia and that the Court award Plaintiff's actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT

36. Plaintiff repeats the allegations set forth in paragraphs 1 - 35 as if fully set forth at length herein.

37. The lease was a valid and enforceable contract between Plaintiff and Defendant.

38. Plaintiff performed all of her obligations under the lease.

39. Defendant breached the lease by failing to sell the Vehicle to Plaintiff at the price agreed in the lease.

40. Plaintiff has suffered damages as a result of Defendant's failure to honor the lease buyout price.

WHEREFORE plaintiff is entitled to:

a. Actual damages;

b. Twice the amount of the finance charge as specified by 15 U.S.C. § 1640 (a)(2)(A)(i);

c. Statutory damages of $2,000 pursuant to 15 U.S.C. § 1640 (a)(2)(A)(iv);

d. Return of the Vehicle's sales price and all incidental and consequential damages incurred by Plaintiff;

e. Return of all principal paid towards the Vehicle purchase;

f. Prejudgment interest at the prime rate as of the date of this cause of action;

    g. All reasonable attorney fees, witness fees and costs, all court costs and other fees incurred by Plaintiff, and such other and further relief that the Court deems just and appropriate.

Dated: Long Island City, New York
        December 28, 2022

        KASELL LAW FIRM

        __/s/_____
        David M. Kasell (DK-7753)
        1038 Jackson Avenue, #4
        Long Island City, NY 11101
        (718) 404-6668